IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONOVAN ONEAL TRAHAN, TDCJ #720753, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-0173 |
| WILLIAM REINKEN, Physician's Assistant, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before this court are various motions, including motions for summary judgment, seeking dismissal of all or part of this action. After reviewing the pleadings and attached records, the court will dismiss some of the defendants and will allow the plaintiff to amend his complaint.

### I. Allegations and Claims

Plaintiff, Donovan Oneal Trahan, is an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID) who claims that TDCJ-CID officials were deliberately indifferent to his serious health needs. Trahan names the following officials in his original complaint: Physician's Assistant William Reinken, University of Texas Health Administrator Sam Young, and Warden Alfred C. Janicek. He alleges that the vision in his right eye began growing dim on September 18, 2003.

Because Trahan was incarcerated at the TDCJ-CID Ferguson Unit at that time, he submitted a "sick call" request to the prison infirmary. Nurse Donna Tucker saw Trahan on September 20, 2003. Trahan asserts that he told Tucker that he thought that he was going blind and needed to see a doctor. Tucker tested Trahan by having him look at a wall mounted eye chart. After the test, Tucker told Trahan that his eyes were fine and that he only needed to wear his glasses. Tucker ignored Trahan's complaint that his vision had worsened in the previous two days.

Trahan's condition continued to deteriorate and he submitted a sick call to defendant Reinken on September 23, 2003, which went unanswered. By September 24, 2003, Trahan had lost all sight in his right eye. He submitted another sick call to Reinken on September 28, 2003, which was also apparently ignored. Trahan submitted a grievance at about the same time.

Trahan was called back to the infirmary on October 1, 2003. However, he was not seen by a physician or eye specialist despite his requests for such attention, and he was merely given another vision test and was told to continue to wear his glasses.

Trahan wrote to the health administrator on October 1, 2003, but received no response. On November 3, 2003, Trahan wrote to defendant Janicek explaining his problem and requesting help, but Trahan received no response. On November 4, 2003, Trahan received a response to his grievance in which he was informed that he would

-2-

be given an appointment with a doctor.  However, no appointment was made, and Janicek was released from prison on January 16, 2004.

On January 28, 2004, Trahan went to an eye doctor who performed an examination and determined that Trahan had a detached retina.  The doctor informed Trahan that the damage could have been repaired had he received prompt medical treatment, but that it was now too late to reattach the retina and that Trahan was permanently blind in his right eye.

Trahan contends that the defendants deliberately ignored his malady and that he is now blind in one eye because of their deliberate indifference.  He seeks monetary compensation for the injuries he has suffered.

## II.  The Defendants' Motions

Young, Janicek, and Reinken have each filed motions for summary judgment.  Summary judgment may be granted when the pleadings and supporting evidence show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party has the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2554 (1986).  If the moving party meets the initial burden of showing that there is no genuine issue, the burden shifts to the nonmovant to set forth specific facts showing

the existence of a genuine issue for trial. Rule 56(e); <u>Hart v. Hairston</u>, 343 F.3d 762, 764 (5th Cir. 2003).

Young asserts in his motion (Docket Entry No. 28) that he retired from his position as Ferguson Unit health administrator on February 21, 2001, well before the alleged violations occurred. Trahan first responded (<u>See</u> Docket Entry No. 32.) by complaining that prison inmates were not notified regarding personnel changes and that he was entitled to know the person who was the health administrator at the time of the incident. In a subsequent motion to dismiss Young (Docket Entry No. 40), Trahan acknowledges that Young was the wrong party and states he originally named Young because that was the name given to him by prison officials. Trahan also complains that the defendants' counsel has refused to disclose the correct name of the unit health administrator. Trahan identifies Gene McMasters as the correct unit health administrator and has filed an amended complaint naming Gene McMasters as a defendant contending that McMasters was the administrator who ignored his requests for help. It is undisputed that Young was not involved in the incidents that resulted in the alleged deprivation. Therefore, his Motion for Summary Judgment (Docket Entry No. 28) will be granted, and Trahan's Motion to Dismiss (Docket Entry No. 40) will be denied as moot.

Warden Janicek's summary judgment motion (Docket Entry No. 27) rests on his argument that he had no personal involvement in the

-4-

alleged violation because as warden he had no role in providing health care to the inmates at his unit.  Furthermore, Janicek is not authorized to make decisions regarding medical care.  He asserts that it was the duty of the health care providers from the Texas Medical Branch at Galveston and Texas Tech University Health Sciences Center to respond to the inmates' health needs.  Moreover, Janicek asserts that he did not ignore Trahan's requests for help; rather, he forwarded them to appropriate medical personnel.

In order for a prisoner to establish a constitutional violation of his civil rights regarding medical care, he must show that the defendant prison official was deliberately indifferent to his serious medical needs.  Estelle v. Gamble, 97 S.Ct. 285, 292 (1976).  To do this, the prisoner must present facts that demonstrate that the official was aware of an excessive risk to his health or safety and that the defendant purposely disregarded or ignored the risk.  Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994).

Janicek forwarded Trahan's requests to the medical department for evaluation and action.  His deference to the health care providers was an adequate response to support a finding that he was not deliberately indifferent to Trahan's need for medical attention.  Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (prison officials are entitled to rely on the expertise of trained health care providers to assess and respond to a prisoner's health and safety needs).  Janicek cannot be held liable even if he was

grossly negligent in his reaction to Trahan's malady.  See also Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir. 1999); Hare v. City of Corinth, Miss., 74 F.3d 633, 645 (5th Cir. 1996); Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992).  Therefore, Janicek's Motion for Summary Judgment (Docket Entry No. 27) will be granted, and he will be dismissed from this action.

Reinken, who was a health care worker at the Ferguson Unit during the time in question, argues in his summary judgment motion (Docket Entry No. 33) that Trahan was provided adequate medical treatment and that he was not personally involved in the alleged deprivations.  Attached as Exhibit A to the summary judgment motion are portions of Trahan's medical records that are purported to show that Trahan received medical treatment, which would refute his claim of deliberate indifference.

The records include a note, dated September 19, 2003, in which Trahan complains of blurry vision in his right eye.  (Exhibit A at 22)  Trahan's vision was tested on September 20, 2003, and it was determined that he had 20/100 vision in his right eye without glasses and 20/20 with glasses.  Id. at 21.  He was then instructed to wear his glasses at all times.  Nurse Donna Tucker signed the report.  Id.  Trahan sent a second note on September 25, 2003, stating that he had almost no vision in his right eye and that his glasses were of no avail.  Id. at 20.  He asked for a second opinion and expressed his fear that he would lose complete vision

if something was not done.  Id.  Apparently, no action was taken because on September 28, 2003, Trahan submitted a sick call request asking why nothing had occurred.  Id. at 19.  A second vision test was performed on October 1, 2003, and the records state that Trahan could see "nothing" out of his right eye, with or without glasses. Id. at 17.

   Trahan submitted a sick call on October 10, 2003, this time complaining that his left eye was getting weaker after having lost all sight in his right eye.  Id. at 9.  An appointment was made for October 13, 2003.  Trahan was seen and treated for a neck problem; however, there is no mention regarding his vision.  Id. at 8.

   Reinken argues that Trahan has failed to show that he was personally involved in the alleged deprivation and that there was an adequate response to his complaints.  Trahan does not allege poor treatment in response to his eye ailment; he alleges no treatment at all.  Reinken's name appears in Trahan's medical records during the period in which he was allegedly denied medical attention regarding his vision.  There is no indication that Reinken was unaware of the malady.  Even a casual perusal of the records would have alerted a lay person that Trahan was blind in one eye.  A Physician's Assistant such as Reinken would not have needed any prompting to recognize that Trahan had a serious medical need that required prompt attention.  See Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) ("A serious medical need is 'one that

has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"); Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).  Loss of vision is a serious need, and a lack of response can be a constitutional violation if the responsible official is aware of the danger and its consequences. Kersh v. Derozier, 851 F.2d 1509 (5th Cir. 1988) (upholding jury verdict against jailers who would not let a detainee get a piece of hay out of his eye even when it began to bleed and when plaintiff ultimately lost his eye as a result); Harris v. O'Grady, 803 F.Supp. 1361, 1366 (N.D. Ill. 1992).

The records do not demonstrate that Trahan was ever seen by a licensed physician for his vision while he was at the Ferguson Unit despite the fact that he went blind in one eye.  Trahan has suffered a serious injury because he has lost the use of that eye. See Kersh.  The fact that Trahan may have been given a vision test does not prove that he was provided sufficient response to his need for medical attention.  See Carswell v. Bay County, 854 F.2d 454, 457 (11th Cir. 1988).

Although it cannot be established from the record whether Reinken was directly culpable for the loss of vision that Trahan suffered, it is clear Trahan was denied basic medical care even after he became blind in one eye.  The vision test results make it evident that Trahan had a serious medical problem and needed more

-8-

than an examination by a nurse.  Reinken was the senior medical official at the unit.  Trahan complained of a serious medical problem and submitted two grievances to Reinken.  Yet, there is no evidence that Reinken provided Trahan any medical care.

Reinken asserts the defense of qualified immunity and that he is entitled to immunity under the Eleventh Amendment to Trahan's claims for monetary damages against him in his official capacity. Civil rights claims for monetary damages against state officials in their official capacities are considered suits against the state, which is immune under the Eleventh Amendment.  Hafer v. Melo, 112 S.Ct. 358, 361 (1991); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Therefore, Reinken's claims against the defendants in their official capacities will be dismissed, and Reinken shall only be allowed to proceed against the remaining defendants in their individual capacities.

The purpose of qualified immunity is to protect a government official from civil liability based on his performance of discretionary duties where his actions are objectively reasonable. Thompson v. Upshur County, Tex., 245 F.3d 447, 456 (5th Cir. 2001). It does not protect an official who is patently incompetent or who knowingly violates a prisoner's rights.  Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 284 (5th Cir. 2002). Qualified immunity is evaluated under a two-step analysis.  First, the court determines whether Reinken has asserted a violation of a

constitutional right.  See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  Second, if a constitutional violation is alleged, the court determines whether the conduct at issue was objectively reasonable in light of clearly established law at the time the challenged conduct occurred.  Id.

The court has already determined that Reinken has asserted a denial of medical care in violation of his constitutional rights and that there is some basis for a finding that one or more officials have been deliberately indifferent to his vision needs.  Moreover, it has been long established that an official violates a prisoner's rights under the Eighth Amendment where the prisoner has been seriously harmed by being delayed or denied access to medical care through the official's deliberate indifference.  See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  In this case Trahan has suffered a permanent loss of sight in one eye because he did not receive any substantial treatment although it was obvious that there was rapid deterioration of vision over a very short period of time.  Under the facts presented in the record at this time, this court cannot find that Reinken is entitled to dismissal on the basis of qualified immunity.  See, Thompson, 245 F.3d at 464.

Reinken also contends that Trahan failed to exhaust administrative remedies before filing this action.  In support of this argument, Reinken submits a Step 1 grievance submitted by Trahan on September 28, 2003.  In his grievance, Trahan sets forth

-10-

the facts that are the basis of the civil rights complaint. On November 4, 2003, he received the following response:

> This office refers to the professional opinion of the medical department in this matter. The medical department investigated this matter and stated: You were seen on 10-1-03 and subsequent to another eye exam you were referred to the optometry clinic. Appointment is pending.

Docket Entry No. 33, Exhibit B.

The response indicates that the officials had complied with Trahan's request for medical attention. The submitted grievance is consistent with Trahan's allegations. He filed a grievance and was promised attention that was never delivered.

Under the Prison Litigation Reform Act, Texas prisoners must exhaust the TDCJ-CID two-step grievance process before filing a complaint. 42 U.S.C. § 1997e; Booth v. Churner, 121 S.Ct. 1819 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). One of the primary purposes of implementing a grievance process in the penal system is to provide prison officials a chance to address legitimate problems and eliminate the unnecessary filing of prisoner suits. See Porter v. Nussle, 122 S.Ct. 983, 988 (2002). In the current action prison officials promised to send Trahan to an optometry clinic. The assurance that Trahan would be seen by a vision specialist effectively eliminated his grounds for filing another grievance because it would have been unreasonable for him to immediately appeal such a response. Two-and-one-half months after receiving the response promising Trahan that he would be seen

by a vision specialist, Trahan was released from prison.  Although it is mandatory for a prisoner to comply with the exhaustion, there are exceptions when a prisoner has been prevented from pursuing all administrative remedies.  See Days v. Johnson, 322 F.3d 863, 866-67 (5th Cir. 2003).

In this present action, where the records indicate that Trahan was promised professional help, which he never received and which was delayed long enough to cause the loss of sight in one eye and any realistic opportunity to request further medical help from his prison officials, it would be inequitable to dismiss the complaint on the basis of failure to exhaust.  Id.  Therefore, Reinken's Motion for Summary Judgment (Docket Entry No. 33) will be denied.

### III.  Trahan's Motion to Amend

Trahan has filed a motion (Docket Entry No. 42) in which he seeks permission to amend his complaint.  Trahan has also submitted a proposed amended complaint (Docket Entry No. 43), which includes new defendants.

The amended complaint does not present any new substantial facts regarding the allegations.  It only substitutes defendants who are alleged to be responsible for the denial of medical care that resulted in Trahan's losing the use of his right eye.  Trahan seeks to remove Sam Young, who has been dismissed, and add the following officials: Ferguson Unit Practice Manager Gene McMasters, Nurse Donna Tucker, Nurse Marilyn Peters, and Assistant Warden

Sweetin. Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend pleadings "shall be freely given when justice so requires." However, leave is not automatic. See <u>Ashe v. Corley</u>, 992 F.2d 540, 542 (5th Cir. 1993). Trahan states that he has added several defendants and has removed one after obtaining evidence from the defendants that discloses the officials who were involved in and responsible for his medical care. Since Trahan is a prisoner who has not had assistance of counsel in this proceeding, he should be given leave to amend so that he can name those who are responsible for the alleged deprivations. <u>Dayse v. Schuldt</u>, 894 F.2d 170, 173 (5th Cir. 1990). Therefore, the motion (Docket Entry No. 42) will be granted, and the amended complaint (Docket Entry No. 43) shall be admitted.

### IV. <u>Conclusion and Order</u>

The court **ORDERS** the following:

1. The Motions for Summary Judgment filed by Janicek and Young (Docket Entry Nos. 27 and 28) are **GRANTED.**

2. The Motion for Summary Judgment filed by Reinken (Docket Entry No. 33) is **DENIED** with regard to individual capacity claims.

3. The Motion for Extension of Time filed by Trahan (Docket Entry No. 39) is **GRANTED.**

4. The Motion to Dismiss filed by Trahan (Docket Entry No. 40) is **DENIED** as **MOOT.**

5. All official capacity claims are **DISMISSED.**

6. The Motion for Leave to File an Amended Complaint filed by Trahan (Docket Entry No. 42) is **GRANTED**.

7. All claims against Sam Young and Warden A.C. Janicek are **DISMISSED**.

8. Gene McMasters, Donna Tucker, Marilyn Peters, and Assistant Warden Sweetin are added as defendants.

9. The Clerk shall send a copy of the Amended Complaint (Docket Entry No. 43) to the defendants.

10. The Texas Attorney General's Office, who is currently representing Reinken, shall appear in behalf of McMasters, Tucker, and Sweetin.

11. The court **APPOINTS** Barrett H. Reasoner, Gibbs & Bruns, L.L.P., 1100 Louisiana, Suite 5300, Houston, TX 77002, telephone 713-650-8805, Fax No. 713-750-0903, to appear on behalf of Trahan. Copies of all instruments on file and all future Orders and pleadings shall be sent to Barrett H. Reasoner.

12. A scheduling hearing is set for July 7, 2006, at 2:00 p.m., in Court Room 9-B, Ninth Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.

**SIGNED** at Houston, Texas, on this the 1st day of May, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE