IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


DONOVAN ONEAL TRAHAN,            §
                                 §
            Plaintiff,           §
                                 §
v.                               §        CIVIL ACTION NO. H-05-0173
                                 §
WILLIAM REINKENS, et al.,        §
                                 §
            Defendants.          §


### MEMORANDUM OPINION AND ORDER


Plaintiff, Donovan Oneal Trahan, brings this action under 42 U.S.C. § 1983 against defendants, William Reinkens, Gene McMasters, Donna Tucker, Marilyn Peters, and Margo Cross, for violating rights guaranteed by the Eighth Amendment to the United States Constitution, as applied to the state through the Fourteenth Amendment, by acting with deliberate indifference to his serious medical needs by ignoring his complaints and refusing to treat him for loss of vision in his right eye.  Pending before the court is Defendants Cross, Tucker, Peters, Reinkens and McMasters' Motion for Summary Judgment with Brief in Support (Docket Entry No. 78). For the reasons explained below defendants' motion will denied.


### I.  Undisputed Facts

At all times relevant to the claims asserted in this action plaintiff was an inmate at the Ferguson Unit of the Texas

Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID).

On or about September 19, 2003, plaintiff submitted a sick call request in which he complained that the vision in his right eye had deteriorated, making his vision blurry.[1]  Nurse Margo Cross processed the sick call request by scheduling an appointment for plaintiff to see a nurse.  On September 20, 2003, Nurse Donna Tucker gave plaintiff a visual acuity test.  The test showed that the vision in plaintiff's right eye was poor without glasses but nearly perfect with glasses.  After the test, Tucker instructed plaintiff to wear glasses at all times.

On or about September 25, 2003, plaintiff submitted a second sick call request in which he requested a "second opinion concerning the out come of [his] 9-20-03 visit to the medical department concerning [his] right eye."[2]  Plaintiff explained that the "[v]ision in my right eye is all but gone.  I can't see on my right without turning my head.  I must have emergency treatment or I fear that I will lose all vision in my right eye.  Even with the glass[es], for now they are of no help to my r[ight]-eye."[3]  A note handwritten on the request signed J. Henley states "visual acuity reviewed by provider.  No indication for visit to optometry."[4]

---

[1]Exhibit 3 to Plaintiff's Response to Defendants' Motion for Summary Judgment (Plaintiff's Response), Docket Entry No. 80.

[2]Exhibit 6 to Plaintiff's Response, Docket Entry No. 80.

[3]Id.

[4]Id.

On or about September 28, 2003, plaintiff submitted a third sick call request and a grievance.  In the sick call request plaintiff asserted, "I requested a second opinion on my R-eye, and I'd like to know why your department has not granted me one."[5] Nurse Margo Cross processed the sick call request by scheduling an appointment for plaintiff to see a nurse.  On October 1, 2003, Nurse Marilyn Peters gave plaintiff a second visual acuity test. The test showed that plaintiff was blind in his right eye for both near and far vision with or without glasses.[6]  Nurse Peters checked a box at the bottom of the test form next to the following text: "refer to MD/MLP [mid-level provider]."[7]  In the September 28, 2003, grievance plaintiff complained that his repeated requests to see a doctor for his vision loss were being ignored.[8]    An October 3, 2003, response to plaintiff's grievance signed by Practice Manager Gene McMasters states, "You were seen on 10-01-03 and subsequent to another eye exam you were referred to the optometry clinic.  Appointment is pending."[9]

On or about October 10, 2003, plaintiff submitted a fourth sick call request in which he stated, "I'd like to see the doctor

---

[5]Exhibit 8 to Plaintiff's Response, Docket Entry No. 80.

[6]Exhibit 10 to Plaintiff's Response, Docket Entry No. 80, p. 6.

[7]<u>Id.</u>

[8]Exhibit 9 to Plaintiff's Response, Docket Entry No. 80.

[9]<u>Id.</u> at p. 4.

concerning my left eye.  I've lost all vision in my R-eye.  Even
with glasses on my left eye is getting weak.  I've also been having
bad headaches."[10]   Nurse Margo Cross processed this sick call
request on October 12, 2003, by noting on the request that
plaintiff had a visual acuity test on October 1, 2003, and an
appointment with a provider scheduled for October 13, 2003.[11]   On
October 13, 2003, plaintiff saw Physician's Assistant (P.A.)
William Reinkens who treated plaintiff for a stiff neck.[12]

On October 20, 2003, plaintiff wrote a letter addressed to Sam
Young, the Health Administrator and Practice Manager over the
medical department at the Ferguson Unit.  In the letter plaintiff
asked for emergency treatment because he was completely blind in
his right eye and the vision in his left eye was growing weak.[13]

On November 3, 2003, plaintiff wrote a letter to the warden of
the Ferguson Unit.  In the letter plaintiff wrote:

> I would like to bring to your attention, a problem
> that I am having with the Ferguson Unit Medical
> Department in hopes that we may come up with some sort of
> solution, to fix the problem in question.
>
> I wrote a grievance on 9-28-03.  I wrote the Health
> Administrator on 10-20-03.  Thus far, I haven't received
> a reply from either.
>
> I've been trying to get help for my right eye which
> went completely out on the 22nd of Sept. 03, after I had

---

[10]Exhibit 11 to Plaintiff's Response, Docket Entry No. 80.

[11]Id.

[12]Exhibit 12 to Plaintiff's Response, Docket Entry No. 80.

[13]Exhibit 17 to Plaintiff's Response, Docket Entry No. 80.

been assured that my R-eye would be fine on the 20th of
Sept. of 03, even after expressing my fears that I was
going to be blind in my R-eye if I didn't receive
immediate medical attention for it.

I am asking that you help me to get immediate
medical attention, for a wait of two are [sic] three
months may be to[o] late.[14]

A handwritten note at the bottom of the letter signed by Nurse

Donna Tucker states "[c]onferred with provider.  Schedule follow-up

with Dr. Julye 11/6/03."[15]

On January 16, 2004, plaintiff was released from prison.

Shortly thereafter an optometrist examined plaintiff and informed

him that he was permanently blind in his right eye.[16]

## II.  Motion for Summary Judgment

Summary judgment is authorized if the movant establishes that

there is no genuine dispute about any material fact and the law

entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about

material facts are "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The

Supreme Court has interpreted the plain language of Rule 56(c) to

mandate the entry of summary judgment "after adequate time for

discovery and upon motion, against a party who fails to make a

---

[14]Exhibit 13 to Plaintiff's Response, Docket Entry No. 80.

[15]Id.

[16]See Affidavit of Donovan Trahan, Exhibit 2 to Docket Entry
No. 80, ¶ 19.

showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct.
2548, 2552 (1986).   If the moving party meets this burden,
Rule 56(c) requires the nonmovant to go beyond the pleadings and
show by affidavits, depositions, answers to interrogatories,
admissions on file, or other admissible evidence that specific
facts exist over which there is a genuine issue for trial.   Little
v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).
In reviewing the evidence "the court must draw all reasonable
inferences in favor of the nonmoving party, and it may not make
credibility determinations or weigh the evidence."   Reeves v.
Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000).

### III.   Analysis

Plaintiff alleges that the defendants deliberately ignored his
serious medical condition and that he is now blind in one eye
because of their deliberate indifference.   Plaintiff seeks monetary
compensation for his injuries.   Defendants argue that they are
entitled to summary judgment because as government officials they
are each entitled to qualified immunity from the claims that
plaintiff has asserted against them.   Defendants also argue that
they are entitled to summary judgment because plaintiff has failed
to exhaust his administrative remedies and suggest that plaintiff's
claims are barred by the Eleventh Amendment.

**A.   Qualified Immunity**

Defendants argue that they are entitled to summary judgment because plaintiff has failed to overcome their assertion of qualified immunity because their actions were objectively reasonable in light of the information they possessed and the then clearly established law.

    1.   Applicable Law

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages [by qualified immunity] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006) (quoting Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982)). See also Hall v. Thomas, 190 F.3d 693, 696 (5th Cir. 1999) (recognizing that the administration of medical care to an inmate is a discretionary function). When assessing a defendant's assertion of qualified immunity, courts engage in a two-step analysis. First, using current constitutional standards, courts determine whether the plaintiff has alleged the violation of a clearly established constitutional right. Id. (citing Rankin v. Klevenhagen, 5 F.3d 103, 105 (5th Cir. 1993)). If so, the court must then determine if the defendant's conduct was objectively reasonable in light of the law that was clearly established when the alleged violation occurred. Id. (citing Rankin, 5 F.3d at

-7-

108).  See also Hall, 190 F.3d at 696.  "Objective reasonableness is a matter of law for the courts to decide, not a matter for the jury . . . However, underlying historical facts may be in dispute that are material to the reasonableness determination."  Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999).  For the plaintiff in this action to overcome the defendants' assertion of qualified immunity, he must demonstrate that the constitutional right that the defendants allegedly violated was clearly established when the alleged violation occurred, and that the defendants' conduct was objectively unreasonable in light of then clearly established law.  Id.

    2.  Denial of Medical Care

    Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by ignoring his complaints and refusing to treat him for loss of vision in his right eye.  A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his or her conduct demonstrates deliberate indifference to a prisoner's serious medical needs.  See Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 111 S.Ct. 2321 (1991)).  See also Estelle v. Gamble, 97 S.Ct. 285 (1976) (concluding that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment").  The Fifth Circuit has described a serious medical

-8-

need as "one for which treatment has been recommended or for which
the need is so apparent that even laymen would recognize that care
is required." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir.
2006).  Defendants do not dispute that deliberate indifference to
a serious medical need violates the Eighth Amendment, or that loss
of vision in one eye constitutes a serious medical need.[17]  Instead,
defendants argue that plaintiff is unable to establish deliberate
indifference.[18]

    3.  <u>Objective Reasonableness</u>

Defendants argue that plaintiff is precluded from establishing
deliberate indifference to his serious medical needs because he was
seen several times by health care providers and none of their
actions were objectively unreasonable.[19]

    (a)  Applicable Law

Plaintiff argues that defendants were deliberately indifferent
to his serious medical needs by ignoring his complaints and failing
to treat the loss of vision in his right eye.  A plaintiff may
establish that a defendant's actions were objectively unreasonable
by showing that government officials "'refused to treat him,
ignored his complaints, intentionally treated him incorrectly, or

---

[17]Defendants' Motion for Summary Judgment, Docket Entry No. 78,
p. 3.

[18]<u>Id.</u>

[19]<u>Id.</u> at p. 5.

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" <u>Gobert</u>, 463 F.3d at 346 (quoting <u>Domino v. Texas Department of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)).

> It is the "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."

<u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting <u>Whitley v. Albers</u>, 106 S.Ct. 1078, 1080 (1986)).

A prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.  For example, if plaintiff presents evidence showing that a substantial risk of serious damage to his future health was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient not only to permit the court to conclude that the defendant-official's failure to get the plaintiff medical treatment was objectively unreasonable, but also to permit a reasonable trier of fact to conclude that the defendant-official was subjectively aware of the risk.  <u>See</u> <u>Easter</u>, 467 F.3d at 463 (citing <u>Farmer v. Brennan</u>, 114 S.Ct. 1970, 1981-82 (1994)).  Genuine issues of material fact regarding the objective reasonableness of each defendant's response to the plaintiff's

complaints of vision loss prevent the court from concluding that any of them are entitled to qualified immunity.

        (b)    Individual Defendants

        (1)  **Nurse Margo Cross**

Defendants argue that Nurse Cross is entitled to qualified immunity because her only involvement in plaintiff's "treatment was to review three sick call requests and schedule appointments for him to be seen [by a treating nurse]."[20]  Asserting that Nurse Cross "was required to schedule a patient for Nurse Sick Call unless she determined that [the] patient was complaining of an emergency that could not wait up to 24 hours," defendants argue that even if she should have followed emergency instead of standard protocol, that she is entitled to qualified immunity because her actions did not amount to deliberate indifference but, at most, to negligence.[21]

Plaintiff argues that Nurse Cross's actions were objectively unreasonable because even after reviewing multiple sick call requests in which he sought treatment for loss of vision in his right eye, she failed to arrange for him to be examined by a physician.  Plaintiff argues that Nurse Cross's responses to his third and fourth sick call requests were objectively unreasonable because the TDCJ Health Care Policy Manual provides that, "[i]n general, if an inmate reports to sick call more than two times with

---

[20]<u>Id.</u> at p. 8.

[21]<u>Id.</u> at p. 9.

the same complaint and has not seen a physician, she/he should receive an appointment to do so."[22]   Plaintiff also argues that Nurse Cross's responses were objectively unreasonable because during her deposition she conceded that she had the ability to call a patient experiencing an emergency to the clinic immediately,[23] and that the plaintiff's complaints, loss of all vision in one eye and headaches, should be treated as an emergency.[24]

Nurse Cross processed plaintiff's first, third, and fourth sick call requests complaining of loss of vision in his right eye. Yet, despite the TDCJ policy that inmates who report to sick call more than twice for the same complaint who have not seen a physician receive an appointment to do so,[25] Nurse Cross took no action to ensure that plaintiff would be seen by a physician. Genuine issues of material fact, such as whether Nurse Cross knew that the sick call requests she processed on September 28 and October 10 were plaintiff's third and fourth requests for the same complaint, and knew that plaintiff had not seen a physician for that complaint, prevent the court from concluding that Nurse Cross's responses to the plaintiff's third and fourth sick call requests were objectively reasonable.

_____

[22]Deposition of P.A. Reinkens, Exhibit 7 to Plaintiff's Response, Docket Entry No. 80, p. 103.

[23]Deposition of Margo Cross, Exhibit 16 to Docket Entry No. 80, p. 152.

[24]Id. at p. 189.

[25]Deposition of P.A. Reinkens, Exhibit 7 to Plaintiff's Response, Docket Entry No. 80, p. 103.

-12-

### (2)  Nurse Marilyn Peters

Defendants argue that Nurse Peters is entitled to qualified immunity because she did not ignore plaintiff's complaints but, instead, gave him a second visual acuity test on October 1, 2003, determined that he had no vision in his right eye, and referred him to a physician or mid-level provider.  Defendants argue that Nurse Peters acted reasonably because following her determination that plaintiff had a problem that she lacked the ability to treat, she referred him to a provider with more knowledge than she.[26] Defendants argue that although Peters did see plaintiff on later occasions, her actions towards him were reasonable because there is no evidence that he continued to complain of vision loss to her.[27]

Plaintiff argues that Nurse Peters' actions were objectively unreasonable because after administering a second visual acuity test and concluding that plaintiff had lost all vision in his right eye, Nurse Peters merely checked a box on the test form indicating that plaintiff should be referred to a physician or a mid-level provider instead of securing emergency treatment.  Plaintiff also argues that Nurse Peters' actions were objectively unreasonable because she failed to ensure that the referral was completed so that plaintiff would be seen by a physician or mid-level provider.[28]

---

[26]Defendants' Motion for Summary Judgment, Docket Entry No. 78, p. 6.

[27]Id.

[28]Plaintiff's Response, Docket Entry No. 80, pp. 37-42.

The summary judgment evidence reflects that after plaintiff's second visual acuity test Nurse Peters concluded that he should be referred to a physician or mid-level provider, but there is no evidence that Nurse Peters completed the referral process or took any action to ensure that plaintiff was seen by a physician or mid-level provider.  Genuine issues of material fact regarding whether Nurse Peters completed the referral process or took any action to ensure that plaintiff was seen by a physician or mid-level provider prevent the court from concluding that her response to the plaintiff's second visual acuity test was objectively reasonable.

### (3)  Nurse Donna Tucker

Defendants argue that Nurse Tucker is entitled to qualified immunity because the only time she saw the plaintiff he was not wearing his glasses except for reading, the visual acuity test that she administered showed that his vision was corrected almost perfectly with glasses, and based on this information her decision not to refer him to a physician was reasonable because she had no indication that he required medical attention.[29]

Plaintiff argues that Nurse Tucker is not entitled to qualified immunity because following her determination that the visual acuity test showed he had nearly perfect vision in his left eye but severe vision loss in his right eye she should have

---

[29]Defendants' Motion for Summary Judgment, Docket Entry No. 78, p. 6.

-14-

referred him to someone with greater knowledge for more in-depth
testing.  As evidence that Nurse Tucker's response to his visual
acuity test was objectively unreasonable, plaintiff cites the
depositions of P.A. Reinkens and Nurse Cross, both of whom
testified that the visual acuity test results would have prompted
them to refer plaintiff for additional testing.[30]  Plaintiff also
argues that Nurse Tucker acted unreasonably when she wrote at the
bottom of the November 3, 2002, letter he sent to the warden,
"Conferred [with] Provider.  Schedule [follow up with] Dr. Julye
11/6/03."[31]  Plaintiff argues that Nurse Tucker's response to his
letter to the warden was unreasonable because he never saw
Dr. Julye, and there is no evidence that an appointment for him to
do so was ever made.

        The undisputed summary judgment evidence show that Nurse
Tucker performed plaintiff's first visual acuity test on
September 20, that the test showed great disparity between the
vision in plaintiff's eyes, but that glasses corrected the poor
vision in his right eye almost perfectly.  Although P.A. Reinkens
and Nurse Cross testified that the results of plaintiff's visual
acuity test would have prompted them to refer him for additional
testing, their testimony reflects only a disagreement in treatment
options and does not create a genuine issue of material fact

---

[30]Plaintiff's Response, Docket Entry No. 80, pp. 35-37.

[31]Exhibit 13 to Plaintiff's Response, Docket Entry No. 80.

regarding the objective reasonableness of Nurse Tucker's actions on
September 20, 2003.  However, the summary judgment evidence also
shows that Nurse Tucker responded to plaintiff's November 3, 2003,
letter to the warden by writing at the bottom of the letter that
plaintiff would be seen by Dr. Julye on November 6, 2003.[32]  Since
it is undisputed that plaintiff was never seen by Dr. Julye, or any
other physician, and since there is no evidence in the record that
an appointment for plaintiff was ever made with Dr. Julye, genuine
issues of material fact regarding the objective reasonableness of
Nurse Tucker's response to plaintiff's November 3, 2003, letter to
the warden prevent the court from concluding that she is entitled
to summary judgment on the basis of qualified immunity.

### (4)  Physician's Assistant William Reinkens

Defendants argue that P.A. Reinkens is entitled to qualified
immunity because the medical records show that the only time he saw
plaintiff he treated plaintiff for a stiff neck.  Defendants argue
that P.A. Reinkens acted reasonably because plaintiff is unable to
show that he knew plaintiff had complained of vision loss.
Defendants also argue that plaintiff is unable to hold P.A.
Reinkens vicariously liable in a supervisory capacity for the
actions of his subordinates.[33]

---

[32]Id.

[33]Defendants' Motion for Summary Judgment, Docket Entry No. 78,
pp. 7-8.

Plaintiff argues that P.A. Reinkens' actions were not objectively reasonable because when P.A. Reinkens saw him on October 13, 2003, plaintiff complained about the loss of vision in his right eye, but P.A. Reinkens ignored his complaint. In his affidavit plaintiff explains that

> I was finally seen by Physician's Assistant William Reinkens on or about October 13, 2003. I told P.A. Reinkens about how I lost all sight in my right eye and was worried about losing vision in my [left] eye, but he told me [he] did not want to hear about my eyes because I was there to talk about the crick in my neck. I tried to explain to him about how I could see when Nurse Tucker examined me, but could no longer see out of my right eye when Nurse Peters examined me, but P.A. Reinkens told me he was only going to discuss my neck issues with me. I was angry and confused because I had been wanting to see a doctor and had been sending in sick calls about my eyes but P.A. Reinkens did not want to listen to what I was saying.[34]

Plaintiff's affidavit testimony, especially when read against the backdrop of four sick call requests and the grievance that plaintiff filed about his vision loss, raises a genuine issue of material fact regarding P.A. Reinkens' knowledge of plaintiff's vision loss that prevents the court from concluding that P.A. Reinkens' actions towards plaintiff were objectively reasonable.

### (5)  Practice Manager Gene McMasters

Defendants argue that Practice Manager Gene McMasters is entitled to qualified immunity because he has no medical training,

---

[34]Affidavit of Donovan Trahan, Exhibit 2 to Plaintiff's Response, Docket Entry No. 80, ¶ 14.

and plaintiff cannot present any evidence showing that he had any personal knowledge of plaintiff's complaints about vision loss. Defendants also assert that the one document that contains McMasters' name is a response to plaintiff's September 28, 2003, grievance, that although that response bears McMasters' signature, it may not have been signed by McMasters but, instead, by a subordinate, and that the "records show that whomever did respond to Plaintiff's complaint believed that Plaintiff had been referred to the optometry clinic."[35] Defendants concede that plaintiff was never seen by the optometry clinic, but argue that McMasters' actions were objectively reasonable because whoever signed the response believed that plaintiff would be seen at the optometry clinic, and there is no evidence that McMasters knew differently.

Plaintiff argues that McMasters' actions were not objectively reasonable because

> [e]ven assuming McMasters merely reviewed his employee's suggested response and then authorized her to sign his name, the act of authorization gives rise to the inference that McMasters was aware of Trahan's medical problems and that McMasters knew that Trahan had gone from having some vision in his right eye on September 20, 2003 to having no vision on October 1, 2003. As the person in charge of ensuring compliance with TDCJ policies, McMasters should have known that it was a violation of the applicable Access to Care policy when Trahan was not seen [by] the Ferguson Unit doctor for his vision, and should have taken steps to ensure that Trahan received appropriate treatment immediately. McMasters' failure to assist Trahan with obtaining immediate or

---

[35]Defendants' Motion for Summary Judgment, Docket Entry No. 78, p. 7.

-18-

emergency medical treatment amounts to deliberate indifference.[36]

The summary judgment evidence shows that a response to plaintiff's September 28, 2003, grievance dated October 3, 2003, bearing McMasters' signature states that an appointment with an optometry clinic was pending.  Since there is no evidence that an appointment for plaintiff was ever made with an optometry clinic, genuine issues of material fact regarding the reasonableness of the response bearing McMasters' signature prevent the court from concluding that he is entitled to summary judgment on the basis of qualified immunity.

4.   Conclusions

Plaintiff has suffered permanent loss of vision in his right eye because he failed to receive treatment for a serious medical need (rapid loss of vision in his right eye) that presented itself while he was confined by the TDCJ-CID.  For the reasons explained above the court concludes that genuine issues of material fact regarding the objective reasonableness of the actions of each defendant preclude granting summary judgment to any of the defendants on the basis of qualified immunity.

B.   Exhaustion

Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies

---

[36]Plaintiff's Response, Docket Entry No. 80, p. 46.

before filing this lawsuit.  Although this argument was raised in a previously filed motion for summary judgment (Docket Entry No. 33), and rejected by the court in the Memorandum Opinion and Order dated May 1, 2006,[37] defendants have neither addressed the court's previously stated reasons for rejecting this argument nor raised any new arguments.  Accordingly, for the reasons stated in the Memorandum Opinion and Order dated May 1, 2006 (Docket Entry No. 45), the court concludes that defendants are not entitled to summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies.

## C.    Sovereign Immunity

Defendants suggest that they are entitled to summary judgment on grounds that the claims asserted against them in this action are barred by the Eleventh Amendment to the United States Constitution.[38]  In the May 1, 2006, Memorandum Opinion and Order, the court observed that

> [c]ivil rights claims for monetary damages against state officials in their official capacities are considered suits against the state, which is immune under the Eleventh Amendment.  Hafer v. Melo, 112 S.Ct. 358, 361 (1991); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Therefore [plaintiff's] claims against the defendants in their official capacities will be

---

[37]See Docket Entry No. 45, pp. 10-12.

[38]See Defendants' Motion for Summary Judgment, Docket Entry No. 78, p. 2 (identifying Issues of Law to be resolved as including "[w]hether Plaintiff has overcome Defendants' entitlement to 11th Amendment Immunity").

> dismissed, and [plaintiff] shall only be allowed to
> proceed against the remaining defendants in their
> individual capacities.[39]

Because the court has already dismissed any official capacity claims that would be barred by the Eleventh Amendment, and stated that the only claims allowed to proceed in this action are claims asserted against the defendants in their individual capacities, and because claims asserted against the defendants in their individual capacities are not barred by the Eleventh Amendment, the court concludes that defendants are not entitled to summary judgment on the basis of the Eleventh Amendment.

## IV.  Conclusions and Order

For the reasons explained above in § III.A. the court concludes that genuine issues of material fact preclude the court from granting summary judgment to the defendants on the basis of qualified immunity.  For the reasons explained above in § III.B. the court concludes that defendants are not entitled to summary judgment on grounds that plaintiff has failed to exhaust his administrative remedies.  For the reasons explained in § III.C. the court concludes that defendants are not entitled to summary judgment on grounds that the plaintiff's claims are barred by the Eleventh Amendment.  Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 78) is **DENIED.**

---

[39]See Docket Entry No. 45 at p. 9.  See also id. at p. 13 ¶ 5.

-21-

Counsel will submit the Joint Pretrial Order by August 10, 2007.  Docket call will be August 17, 2007, at 4:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.

**SIGNED** at Houston, Texas, on this the 25th day of July, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-22-